UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

VINCENTEA MANSFIELD,

                    Plaintiff,                   Case No. 2:11-cv-270

v.                                     Honorable R. Allan Edgar

LOUIS BOCKNER, et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Vincentea Mansfield, an inmate at the Marquette Branch Prison, filed this *pro se* action pursuant to 42 U.S.C. § 1983 against numerous prison officials.  Specifically, Plaintiff names Sergeant Louis Bockner, Property Room Supervisor Ken Durant, Hearing Investigator Rick Mohr, Assistant Resident Unit Manager Phillip Johns, Sergeant R. Brown, Hearing Officer Thomas Mohrman, Resident Unit Manager Ben Mercier, Assistant Deputy Warden Ken Tribley, Assistant Deputy Warden James Alexander, Inspector Larry Marshall, Warden Robert Napel, Resident Unit Officer T. Ninnis, Law Library Tech Curtis Masllen, Captain Thomas Dahl, Prison Health Care Services Inc., Physician's Assistant Joshua, Health Care Manager David Hill, MDOC Director Kenneth Mceon, and John Does Resident Unit Officers, Supervisors, Sergeants, and three Unknown Registered Nurses.

A review of Plaintiff's complaint, as well as the attachments thereto, reveal that on January 31, 2011, Plaintiff received a misconduct ticket from Defendant Bockner for possession of a weapon.  In the ticket, Defendant Bockner described the incident as follows:

> Prisoners Mansfield #704372 and Johnson #187260 started striking each other to the face and head areas in front of G-Blk near the entrance door.  Staff restrained both prisoners.  Johnson was escorted to the B.C. and treated for two puncture wounds to the face.  Mansfield was the only person to strike Johnson in the face.  A weapon was recovered by [Defendant] Durant in the immediate area of the fight.  This weapon was approx. 7" long and sharpened to a point.  I believe this weapon was made from a cable cord.  It is reinforced by a cable cover, seg. pen and threading from a mattress cover.  The inner section is made from the inner wire of the cable cord.  When this item was recovered, it was bent which I believe shows that Mansfield struck Johnson in the face with this weapon.  Prisoner identified by I.D. card and daily contact.  Misconduct written at this time due to investigation.

- 2 -

(Plaintiff's Exhibit A, p. 1-2.)

On February 15, 2011, Plaintiff received a misconduct hearing before Defendant Mohrman.  During the hearing, Defendant Mohrman considered Plaintiff's statement, the critical incident report, photos of the victim, photos of the weapon, and video of the incident.  In the reasons for finding, Defendant Mohrman noted:

> The prisoner is guilty of the charge of possession of a weapon. The only prisoner seen fighting with and making contact with prisoner Johnson was this prisoner, Mansfield.  Johnson has a puncture wound to the face.  After the incident the weapon seen in the photo was found in the area where Johnson and Mansfield were exchanging blows.  The video neither supports nor denies the claim this prisoner used the weapon on Johnson.  I find he was the only one who could have done so as he was the only one seen fighting with Johnson.  Logic dictates that this prisoner used the metal rod which had a handle and a sharpened end to puncture the other prisoner during the incident.  He then discarded the weapon.  It was not noticed as other staff arrived and the prisoners were cuffed and secured.

> This would have been combined with the fight misconduct had it been available for the prisoner's hearing.  Therefore while finding him guilty I am giving him the same sanction as he had for the fight.

(Plaintiff's Exhibit A, p. 6.)

Plaintiff claims that Defendant Durant falsely accused Plaintiff of possessing a weapon during a fight.  Plaintiff also makes conclusory assertions that Unknown Commanding Officers #1 and #2 allowed discrimination to occur and refused to loosen Plaintiff's handcuffs, which caused permanent scars on Plaintiff's wrists.  Plaintiff also states that Unknown Health Care R.N.s and Medical Doctor refused to provide Plaintiff with necessary treatment for his injured eye and

wrists, and that Defendant Hill failed to adequately train and supervise the R.N.s.  Plaintiff states that Defendant Unknown Physician's Assistant Joshua also refused Plaintiff treatment.

Plaintiff alleges that Defendants Brown and Bockner conspired to plant a weapon following the fight and to accuse Plaintiff of possessing the weapon.  Plaintiff claims that institutional video proved that he did not have a weapon and that Defendants Mohr and Mohrman disregarded this evidence in violation of Plaintiff's due process and equal protection rights.  Plaintiff claims that Defendant Dahl conspired with his subordinates to engage in selective enforcement of prison rules.  Plaintiff states that Defendant Napel failed to properly supervise Defendant Dahl and that Defendant Mercier condoned the selective enforcement of rules by Defendants Mohr, Mohrman, and Bockner.

Plaintiff states that he filed grievances regarding Defendants' corruption, but that his grievances were ignored by Defendant Marshall.  Plaintiff states that in retaliation for his grievances, Defendant Masllen falsely accused Plaintiff of failing to return a law book, despite the fact that Plaintiff returned this volume on May 6, 2011, via second shift Resident Unit Officer Landcure.  On June 16, 2011, Defendant Johns refused to allow Plaintiff to attend a major misconduct hearing in retaliation for filing grievances and that Defendant Mohr conspired with Defendant Johns to allow this to occur.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

- 4 -

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

- 5 -

As noted above, Plaintiff claims that his misconduct conviction for possession of a weapon violated his due process rights.  .  Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments.  M.C.L. § 791.252.  A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs."  *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed.  *Id.*  Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record.  In the reasons for finding, Defendant Hearing Officer Mohrman stated:

> The prisoner is guilty of the charge of possession of a weapon.  The only prisoner seen fighting with and making contact with prisoner Johnson was this prisoner, Mansfield.  Johnson has a puncture wound to the face.  After the incident the weapon seen in the photo was found in the area where Johnson and Mansfield were exchanging blows.  The video neither supports nor denies the claim this prisoner used the weapon on Johnson.  I find he was the only one who could have done so as he was the only one seen fighting with Johnson.  Logic dictates that this prisoner used the metal rod which had a handle and a sharpened end to puncture the other prisoner during the incident.  He then discarded the weapon.  It was not noticed as other staff arrived and the prisoners were cuffed and secured.
>
> This would have been combined with the fight misconduct had it been available for the prisoner's hearing.  Therefore, while finding him guilty I am giving him the same sanction as he had for the fight.

(Plaintiff's Exhibit A, p. 6, docket #1-1.)

- 6 -

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing.  Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985).  Plaintiff has failed to show that his constitutional rights were denied.

In addition, the court notes that liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

- 7 -

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Dahl, Mercier, Napel, Mceon, and Place were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Dahl, Mercier, Napel, Mceon, and Place had in this action involve the

denial of administrative grievances or the failure to act.  Defendants Dahl, Mercier, Napel, Mceon, and Place cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the Court concludes that Plaintiff's claims against Defendants Dahl, Mercier, Napel, Mceon, and Place are properly dismissed for lack of personal involvement.

Finally, the court notes that the remaining allegations in the Plaintiff's Complaint are broad, conclusory statements which are not supported by sufficient facts to deserve serious consideration.  *See*, e.g., *Nuclear Transport & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989), *cert. denied*, 494 U.S. 1079 (1990); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-437 (6th Cir. 1988); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102 (6th Cir. 1985); *Johnson v. Stark*, 717 F.2d 1550 (8th Cir. 1983).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: _____6/27/2012_____          _____*/s/ R. Allan Edgar*_____
                                               R. Allan Edgar
                                               United States District Judge